```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA,        )
                                 )
        v.                       )   Cr. No. 08-10070-MLW
                                 )
MICHAEL SMEGAL,                  )
        Defendant.               )

MEMORANDUM AND ORDER

WOLF, D.J.                                        November 29, 2010

I.   SUMMARY

Defendant Michael Smegal was charged with ten counts of mailing threatening letters, in violation of 18 U.S.C. §844(e). The threatening letters were sent as a result of Smegal's obsession with the actress Jodie Foster, in an effort to get her attention. It is now undisputed that Smegal had neither the intention nor the ability to carry out his threats.

After a forensic psychiatric evaluation of Smegal and a bench trial, Smegal was, with the agreement of the government, found not guilty by reason of insanity, pursuant to 18 U.S.C. §17. A further forensic examination of Smegal was conducted by the Bureau of Prisons ("BOP"), which opined that Smegal's unconditional release would not now create a substantial risk of bodily injury to another person or serious damage to the property of another. After two hearings, the court finds that Smegal has proven by a preponderance of the evidence that this conclusion is correct. See 18 U.S.C. §4243(e).

The BOP's opinion is not disputed by other expert evidence. In addition, Smegal credibly testified that his prosecution and the 19 months he has spent in custody have caused him to understand the seriousness of mailing threatening letters, and he does not intend to do so again. Moreover, Smegal will be voluntarily civilly committed and treated by the Commonwealth of Massachusetts immediately upon his release from federal custody.

The court agrees with the BOP that Smegal now has a mental illness that includes an enduring obsession with Jodie Foster, and that he may well resume writing letters to her. However, the court also agrees with the BOP that Smegal has shown that he is not likely to threaten Foster or anyone else again. More specifically, as indicated earlier, Smegal has shown that his release will not create a substantial risk of bodily injury to another person or serious property damage. Therefore, as required in these circumstances by 18 U.S.C. §4243(e), Smegal is being ordered released unconditionally forthwith.

II. BACKGROUND

Smegal was first treated for mental illness in 1983 and, thereafter, received intermittent mental health treatment, including periodic hospitalization beginning in 1988. See Oct. 27, 2008 Neuropsychiatric Evaluation ("2008 Report") at 5-7. In or around 2005, although possibly as early as 1998, Smegal began obsessively sending letters and notes to Jodie Foster. See id. at

2

6; July 29, 2010 Psychiatric Evaluation ("2010 Report") at 8. When Foster failed to respond, Smegal began to mail threatening letters and bomb threats to various individuals and institutions around the Los Angeles area, including Los Angeles International Airport. See 2008 Report at 6-7; 2010 Report at 8. The letters were sent in an effort to get Foster's attention.

On March 27, 2008, Smegal was indicted on ten counts of mailing a bomb threat, in violation of 18 U.S.C. §844(e). After a bench trial on April 5, 2010, with the agreement of the government, Smegal was found not guilty only by reason of insanity. See Apr. 5, 2010 Order at 1. That finding triggered the need for a psychological evaluation of Smegal and a subsequent hearing to determine whether Smegal's release would create a substantial risk of bodily injury to another person or serious damage to the property of another person. See 18 U.S.C. §§4243(b) and (c). The court ordered the BOP to conduct the required psychological examination of Smegal and to submit a report prepared in accordance with 18 U.S.C. §4247(c). See Apr. 5, 2010 Order at 2.

The BOP issued its report on July 29, 2010. See 2010 Report. Based on a comprehensive evaluation conducted by staff at the Federal Medical Center in Butner, North Carolina ("FMC-Butner"), Smegal was diagnosed with Schizophrenia, Residual Type, Episodic with Prominent Negative Symptoms. See id. at 7. In its report, the BOP noted that Smegal has neither the intention nor the capacity to

3

make good on his threats; has no known history of substance abuse; does not appear to own any weapons; has positive community and family support; does not have significant psychopathic personality traits; has not manifested evidence of anger since being admitted to FMC-Butner; and has not acted out impulsively while in custody. See id. at 9-11. Smegal's overall assessed risk of violence "was determined to fall in the Low range." Id. at 12. Accordingly, despite acknowledging that "it is probable he will eventually continue with his letter writing [to Foster] upon his release. . . [and it] is also possible he could again begin sending threatening letters," the BOP concluded that Smegal did not meet the criteria for commitment and recommended his release. Id.

    At a hearing on October 7, 2010, Dr. Angela Walden Weaver, the psychologist who supervised Smegal's evaluation for the BOP, clarified that it was the BOP's position that Smegal should be released unconditionally. At that hearing, the court also heard from Dr. Kenneth Mitchell of the Massachusetts Department of Mental Health ("DMH"). The court ordered the parties to confer and report concerning the resources that would be available to Smegal if he were released unconditionally pursuant to 18 U.S.C. §4243(e). See Oct. 8, 2010 Order at 1. The court also ordered the BOP to report what conditions would be appropriate if Smegal were committed to the custody of the Attorney General, pursuant to 18 U.S.C. §4243(e), and subsequently certified for conditional release,

4

pursuant to 18 U.S.C. §4243(f). See id.

The parties submitted a November 4, 2010 letter from the DMH describing the resources that could be made available to Smegal upon his release. See Joint Status Report, Ex. A at 1-4. More specifically, the DMH described a multi-stage treatment program beginning with voluntary inpatient hospitalization and ending with Smegal's eventual discharge into a clinically appropriate community setting. See id. The parties also submitted a November 5, 2010 letter from the BOP, reiterating its opinion that Smegal "would not pose a substantial risk of bodily injury to another person or serious damage to the property of another if he was released unconditionally." Id., Ex. B at 2. The BOP also opined that, if Smegal was committed to the custody of the Attorney General and then certified for conditional release pursuant to 18 U.S.C. §4243(f), the treatment program described by the DMH would be "more than sufficient to ameliorate any risk" that Smegal might pose due to his mental illness. Id.

A further hearing was held on November 23, 2010, to determine whether Smegal had met his burden of proving that his release would not create a substantial risk of bodily injury to another person or serious damage to the property of another person. The government argued that Smegal should not be released unconditionally, but that the Director of the BOP facility at which Smegal is hospitalized could certify, pursuant to 18 U.S.C. §4243(f), that Smegal is now

5

eligible for release on the conditions for treatment described by DMH. Smegal represented that he was willing to submit voluntarily to the treatment program recommended by DMH. He subsequently filed an executed Application for Care and Treatment on a Conditional Voluntary Basis, a form of civil commitment. The DMH advised the court that a bed will be held for Smegal at Tewksbury State Hospital until at least November 30, 2010.

III. ANALYSIS

As Smegal was found not guilty by reason of insanity, the court must decide if he has now proven that his release will "not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. . . ." 18 U.S.C. §4243(e).

If Smegal meets his burden, he must be released unconditionally. See id.; United States v. Carbullido, 251 F.3d 833, 834 (9th Cir. 2001). If he fails to prove that his unconditional release is appropriate, the court must commit him to the custody of the Attorney General. See 18 U.S.C. §4243(e). The Attorney General would be required to attempt to cause the Commonwealth of Massachusetts to assume responsibility for Smegal's care and custody. Id. If that effort failed, the Attorney General would retain custody of Smegal until the Attorney General determined that Smegal's release, unconditionally or on certain conditions, would not create a substantial risk of bodily injury to

6

another person or serious damage to property of another. See 18 U.S.C. §§4243(e) and (f). Upon such a certification, the court could release Smegal conditionally or unconditionally. See 18 U.S.C. §4243(f). However, in the present posture of this matter, in which the court is acting pursuant to 18 U.S.C. §4243(e), conditional release is not an option. See United States v. Livesay, 600 F.3d 1248, 1251-52 (10th Cir. 2010) (holding that "conditional release is a post-commitment, not pre-commitment possibility"); Carbullido, 251 F.3d at 834 (same); United States v. Jain, 174 F.3d 892, 897 (7th Cir. 1999) ("The question posed by the § 4243(c) hearing is a simple one: can the person be released outright? If the answer is yes, that is the end of things; the statute makes no provision for continued monitoring or revocation of release."); United States v. Bohe, 370 F. Supp. 2d 958, 959 (D.N.D. 2005) ("[H]aving made a finding under 18 U.S.C. § 4243(e) that [a person] does not pose a danger to society, the law does not allow for conditions to be imposed upon release.").

Accordingly, the court must now decide whether to release Smegal unconditionally or commit him to the custody of the Attorney General. This determination involves a two-step process. First, the court must determine the evidentiary standard by which Smegal must prove his release is justified. See 18 U.S.C. §4243(d). More specifically, the court must decide whether the preponderance of the evidence standard or the clear and convincing evidence standard

7

is applicable. Second, the court must determine, under the applicable evidentiary standard, whether Smegal has proven that his release would not create a substantial risk of bodily injury or serious property damage. See 18 U.S.C. §4243(e).

The government argues that Smegal must prove that he is entitled to unconditional release by clear and convincing evidence and that he has not done so. Smegal asserts that the preponderance of the evidence standard applies and that he has met his burden. The court finds Smegal's contentions to be correct.

"After a defendant has been found not guilty only by reason of insanity, an inference of continued mental illness and dangerousness remains that justifies the acquitee's commitment for treatment." United States v. Wabol, No. 04-CR-62-TS, 2006 WL 3775978, at *2 (N.D. Ind. Dec. 21, 2006) (citing Jones v. United States, 463 U.S. 354, 366 (1983)). Therefore, the former defendant bears the burden of proving he can be safely released. This burden varies according to the nature of the underlying offense:

> [A] person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage, has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. With respect to any other offense, the person has the burden of such proof by a preponderance of the evidence.

18 U.S.C. §4243(d). Therefore, the evidentiary standard by which Smegal must prove his eligibility for release depends on whether his offense is one "involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage." Id.

Smegal was charged with mailing bomb threats in violation of 18 U.S.C. §844(e). That statute provides that:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. §844(e). Although the First Circuit has not articulated the elements of a violation of 18 U.S.C. §844(e), the Fourth Circuit has explained that "§ 844(e) describes a single offense with five elements: (1) willfully (2) making a threat or conveying false information about an attempt (3) by mail, telephone, telegraph, or other instrument of commerce (4) to kill, injure, or intimidate an individual or damage or destroy property (5) by means of fire or an explosive." United States v. Spruill, 118 F.3d 221, 224-25 (4th Cir. 1997).

The Tenth Circuit has held that it is the general nature of the crime, rather than the manner in which the crime was committed

in a particular case, that determines the applicable evidentiary standard. See United States v. Gilgert, 314 F.3d 506, 514 (10th Cir. 2002). The Tenth Circuit stated that some crimes, such as armed robbery, inherently present a substantial risk of bodily injury and/or property damage and, therefore, invoke the clear and convincing standard. Id. (citing United States v. Jackson, 19 F.3d 1003, 1007 (5th Cir. 1994)). In contrast, it noted that being a felon in possession of a firearm has been held not to present such a substantial risk and has been deemed to be subject to the preponderance of the evidence standard. Id. (citing United States v. Bilyk, 949 F.2d 259, 261 (8th Cir. 1991)).

As the Tenth Circuit observed:

> [T]hreats do not map easily onto the taxonomy of crimes created by § 4243. A threat is a "communicated intent to inflict physical or other harm on any person or property." Black's Law Dictionary 1480 (6th ed. 1990) (quoted in United States v. Gottlieb, 140 F.3d 865, 872 (10th Cir. 1998)). It is therefore somewhat difficult to determine whether threats as a class fit the statutory test of §4243 because threats "do not seem to fall squarely within either the violent of non-violent category of crimes." Jeremy D. Feinstein, Are Threats Always Violent Crimes?, 94 Mich. L. Rev. 1067, 1068-69 (1996).

Id.

As the elements of a §844(e) offense described in Spruill, 118 F.3d at 224-25, indicate, it is possible to commit the crime of mailing threats without causing injury to another person or serious property damage. Contrary to the government's contention, the court finds that such threats do not necessarily involve a substantial

risk of bodily injury to another person or of serious damage to property. For example, Smegal had neither the intent nor the capacity to inflict such harm in this case. In this sense, Smegal's case is comparable to other §844(e) cases that have been adjudicated by this court. Such cases have generally involved idle threats, and the responses to those threats have not resulted in any injury to persons or property. In the reported case most analogous to the instant action, the district court employed the preponderance of the evidence standard. See United States v. Wattleton, 296 F.3d 1184, 1198 n.24 (11th Cir. 2002).[1] In Gilgert, the Tenth Circuit applied the clear and convincing standard because it held that the crime of making threats against the President is unique and "'qualitatively different from a threat against a private citizen or other public official. . . .'" 314 F.3d at 515 (quoting United States v. Twine, 853 F.2d 676, 681 (9th Cir. 1988)). The foregoing indicates that it is most appropriate to deem the preponderance of the evidence standard to be applicable if the general nature of a §844(e) offense provides the proper basis for identifying the evidentiary standard.

However, it is not evident to the court that the Tenth Circuit was correct in holding that the choice between evidentiary

---

[1] The court recognizes that in Wattleton, the Eleventh Circuit noted that, because the government had not cross-appealed on the burden of proof issue, it was not addressing "whether the higher standard of clear and convincing evidence applied to [the defendant's] offenses." 296 F.3d at 1198 n.24.

11

standards should be determined based on the general nature of the crime rather than the facts concerning the defendant's conduct. See Gilgert, 314 F.3d at 514. This court is now required to decide whether or not Smegal presents a substantial risk of harming people or property if released. If he had the actual intent and ability to carry out the threats that caused him to be charged, it would be most reasonable to hold him to the higher standard of proving that he can now safely be unconditionally released. Where, as here, it is undisputed that he had neither the intent nor the ability to carry-out his earlier threats, the lower standard of proof seems most appropriate in view of Smegal's competing liberty interest.

Because the crime of mailing threats can be, and often is, committed without presenting a substantial risk of bodily injury to another person or of serious damage to property, and because no such risk was actually presented by Smegal's threats, the court finds the preponderance of the evidence standard to be applicable in this case.

As indicated earlier, Smegal has satisfied his burden of proving that he should now be unconditionally released. The BOP has evaluated Smegal and twice opined that he does not pose a substantial risk of bodily injury to another person or serious damage to the property of another. See 2010 Report at 12; Joint Status Report, Ex. B at 2. There is no expert opinion to the contrary. Nor has the government shown that the BOP, which

12

regularly does §4243(b) evaluations, did not apply the proper legal standard in reaching its conclusion.

In addition, on November 23, 2010, Smegal testified credibly that he did not initially appreciate the serious, criminal nature of his efforts to get Foster's attention by sending threatening letters, but his prosecution and detention for 19 months has caused him to understand that he must not make such threats again, and he does not intend to do so.

Smegal will be immediately civilly committed for treatment if he is now released unconditionally. If Smegal seeks to terminate his voluntary civil commitment and the DMH perceives that he is then dangerous, it will have an opportunity to petition a state court to extend Smegal's commitment. See Mass. Gen. Laws. ch. 123, §11.

In these circumstances, the court finds that Smegal has a mental illness that includes an enduring, delusional obsession with Jodie Foster. He has not proven that he will not resume writing letters to Foster or her representatives. However, the court agrees with the BOP that Smegal has shown that he is not likely to send threatening letters in the future and, in any event, that his release now will not create a substantial risk of bodily injury to another person or serious damage of property of another.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that Smegal shall, pursuant to 18 U.S.C. §4243(e), be released from custody forthwith.

/s/ MARK L. WOLF
UNITED STATES DISTRICT JUDGE
